CALDER, Respondent, vs. CROWLEY, Appellant.

*March 15 — April 25, 1889.*

*Court and jury: Evidence.*

1. Where there is some evidence to support the contention of the de- fendant it is error to direct a verdict for the plaintiff because of " the positive nature of the testimony of the plaintiff and the in- definite nature of the testimony of the defendant."

[2. Whether a motion by each party that a verdict be directed in his favor would have the effect to take the case from the jury and submit the issues to the determination of the court, not decided.]

APPEAL from the Circuit Court for *Chippewa* County. The case is stated in the opinion.

For the appellant there was a brief by *Stafford & Connor*, attorneys, and *H. H. Hayden*, of counsel, and oral argu- ment by *W. H. Stafford*.

*D. Buchanan, Jr.*, for the respondent, to the point that when both parties have requested the court to direct a ver- dict there is no question of fact to be reviewed by the ap- pellate court, as this is virtually an agreement of the parties

to submit the question to the judge, and if there is any evidence to uphold his decision it will be sustained, cited *Dillon v. Cockcroft*, 90 N. Y. 649; *Goodwin v. Bunzl*, 6 Civ. Pro. R. 226.

LYON, J. The action is replevin for a span of horses. The plaintiff claims to be the owner thereof by purchase from one Arrance. The defendant claims the right to the possession of the horses under a chattel mortgage upon them, executed to him by one Sugars for the purchase price of the same horses. The mortgage bears date April 18, 1887. The question litigated on the trial was whether Sugars owned the horses when the mortgage was executed.

Sugars purchased the team of the defendant in the fall of 1886. During the following winter he and Arrance were partners in a certain logging enterprise. The firm used the team in controversy, together with certain teams of Arrance's, in their logging operations. At the close of the logging season the firm was largely indebted to Arrance, and he retained in his possession the team in controversy, and all other property that had been used in the copartnership business. He sold and delivered this team to the plaintiff, and subsequently the defendant succeded in getting possession thereof without the plaintiff's consent.

The contention of the plaintiff is that Sugars transferred the team to the firm as part of the capital he agreed to invest in it. If this is true, Arrance was undoubtedly entitled to the possession of the horses, and after his purchase the plaintiff was entitled to such possession.

The contention of the defendant is that Sugars retained the ownership of the horses, and only put into the firm business the use of them. If this is so, the mortgage is valid and the defendant is entitled to the possession of the team.

The circuit judge held that it was established by the evidence that Sugars transferred the team to the firm as part

of the capital stock which he agreed to invest therein, and thereupon instructed the jury to return a verdict for the plaintiff, which was accordingly done. The defendant appeals from the judgment against him rendered pursuant to the verdict.

This judgment cannot be upheld. There certainly is testimony in the bill of exceptions tending to show that Sugars retained the ownership of the horses, and only put into the firm business the use of them. This will appear in the following brief extract from the testimony of Sugars: "*Question.* Now state whether or not there was any agreement made by which you were to own any interest in Arrance's two teams? *Answer.* None whatever. *Q.* Was there any agreement by which Arrance was to own any interest in your team or oxen? *A.* None whatever, that I can remember." There is other testimony tending in the same direction. This testimony was sufficient to send the question of ownership and consequent right of possession to the jury. It would have been competent for the jury to have found from this testimony, and from all the circumstances of the case as disclosed by the testimony, that Sugars never transferred the ownership of the team to the firm, and hence that the defendant is entitled to the possession thereof under his chattel mortgage.

The circuit judge scarcely found that there was no testimony tending to sustain the defendant's contention, for he expressly placed his ruling upon "the positive nature of the testimony of the plaintiff, and the indefinite nature of the testimony of the defendant." In other words, he determined the weight of the testimony, and in so doing assumed to exercise the functions of the jury. This was manifest error.

It was stated by counsel for the plaintiff that at the close of the testimony each party moved the court to direct a verdict in its favor, and claimed that the effect of these mo-

tions was to take the case from the jury and submit the issues therein to the determination of the court. The record does not sustain the statement of counsel. It appears therefrom that the plaintiff moved the court to direct a verdict for him, and the court said he would have to do so. Counsel for the defendant thereupon argued that, in the most favorable view for the plaintiff that could be taken of the testimony, the question whether Sugars put in the horses as partnership property was for the jury, and said: "I claim a verdict should in fact be directed upon that point in favor of the defendant." But he did not submit any motion to that effect. Had he done so, however, we should be slow to hold that he thereby waived his right to have the question passed upon by the jury.

*By the Court.*— The judgment of the circuit court is reversed, and the cause will be remanded for a new trial.