RAY UMSTED, A MINOR, BY ALBERT UMSTED, GUARDIAN AD LITEM vs. THE COLGATE FARMERS ELEVATOR COMPANY, A CORPORATION.

Opinion filed June 28, 1909.

**Master and Servant — Injuries to Servant — Contributary Negligence — Questions for Jury.**

1. Plaintiff, a minor, between 19 and 20 years of age, was injured while in defendant's employ in attempting to operate a dangerous contrivance which defendant's manager had caused to be recently installed for the purpose of utilizing power for a gasoline engine used at defendant's grain elevator in pulling cars into position for loading grain. Such contrivance consisted of a wooden drum or capstan which was securely bolted to the shaft connecting the engine to the machinery in the elevator, and also a long rope extending from such drum, or capstan to a pulley attached to the rail of the railroad track about thirty feet distant and at right angles therewith and thence along the track to the car to be moved. The scheme was to pull the car by causing the rope to wind upon such capstan as the shaft revolved and, in order to operate the same it was necessary for some one to stand back of such capstan and pull the rope sufficiently taut to create enough friction to cause such rope to wind. Plaintiff was by defendant's manager assigned to such duty, and he was injured during the first attempt to operate the contrivance by being caught by such rope and pulled upon and around such drum. *Held,* that the questions of defendant's negligence, of plaintiff's contributory negligence, and his assumption of the risks were, under the facts, properly for the jury.

**Same — Assumption of Risk.**

2. The rules of law relative to the respective duties and rights of master and servant regarding obvious risks of the service and in respect to negligence, assumption of risk, and contributory negligence are stated at length in the opinion.

**Right to Jury Trial — Directed Verdict — Waiver of Jury.**

3. At the close of plaintiff's case, defendant moved for a directed verdict, which motion was denied and an exception taken. At the close of defendant's testimony, and after both parties had rested, such motion was renewed and a like ruling made; defendant saving an exception. Thereafter plaintiff asked the court to instruct the jury that the only question for them to consider was the question of the extent of the injury and the amount of damage; it being plaintiff's contention that the evidence was conclusive in his favor upon all other issues. Such request for instruction was granted, and defendant excepted. *Held,* that such ruling was prejudicial error. Defendant was improperly deprived of its right to a trial by jury of all

the issues, such right not having been waived, and the trial court was not warranted in the assumption that defendant in making its said motions thereby waived a jury, and submitted all issues to the court for decision.

Appeal from District Court, Cass county; *Chas. A. Pollock*, J.

Action by Ray Umsted, by Albert Umsted, his guardian ad litem, against the Colgate Farmers' Elevator Company. Judgment for plaintiff, and defendant appeals.

Reversed, and new trial ordered.

*Ball, Watson, Young & Hardy,* for appellant.

Where both parties are guilty of negligence no recovery can be had. West v. N. P. Ry. Co., 13 N. D. 221; 100 N. W. 254; Labat, Master and Servant, Sec. 339.

Where dangers are open and obvious or may be discovered by the exercise of prudence and care, attention need not be called to them. Carlson v. Sioux Falls Co., 8 S. D. 47; 65 N. W. 419; Anderson v. Winston, 31 Fed. 528; Water Supply Co. v. White, 24 N. E. 747; The Saratoga, 94 Fed. 221; Carey v. B. & M. R. R., 33 N. E. 512.

*W. J. Courtney,* for respondent.

Installing a defective appliance, and knowingly ordering an inexperienced youth into a dangerous place to operate it, with no warning of its dangerous character, render the master liable in damages. 7 A. & E. L. Ency., (2nd Ed.) 423, note 1, cases cited; 5 Thompson on Negligence, Sec. 5378; Meehan v. Great Northern Ry. Co., 13 N D, 432, cases cited; Brazil Black Co., v. Gaffney, 4 L. R. A. (O. S.) 850; Sherman v. Menominee River Lumber Co., 1 L. R. A. 173 Choctaw O. & W. Ry. Co., v. Wilker, 84 Pac. 1086; Tuckett v. American Steam Laundry, 4 L. R. A. (N. S.) 990; 84 Pac. 500; Granrus v. Croxton Mining Co., 113 N. W. 693 Choctaw, Oklahoma R. Ry. Co., v. Jones, 4 L. R. A., (N. S.) 837; 92 S. W. 244; Barrett v. Reardon, 104 N. W. 309; Illinois Southern Railway Co. v. Marshall, 66 L R A, 297; Newbury v. Getchell, 69 N. W. 743; Lohman v. Swift & Co., et al, 117 N. W. 418; James v. Rapids Lumber Company, 44 L. R. A. 33.

Dallemand v. Saalfeldt, 48 L. R. A. 753, notes; 175 Ill. 310; Dizonno v. G. T. No. Ry. Co., 114 N. W. 736.

By a motion for a directed verdict, the mover waives his right to verdict of a jury, unless a specific request to go to the jury is made after his motion is denied. First Methodist Church v. Fadden, 8 N. D. 162; Erickson et al. v. Nat. Bank, 9 N. D. 81; Yankton Ins. Co. v. Fremont E. & M. V. Ry. Co., 64 N. W. 514; Indiana Railroad Co. v. Quick, 109. Ind. 295. When an employe is ordered to use an instrument, which the master knows is dangerous, contributory negligence and assumption of risk cannot avail. Johnson v. Atwood, 112 N. W. 262; Duchene v. Lefebvre, 112 N. W. 865; Cody v. Longyear, 114 N. W. 735; Siegel Cooper Co. v. Tracka, 2 L. R. A., (N. S.) 647; 218 Ill. 559; 75 N. E. 1053; Goodrich v. N. Y. Central Ry. Co., 26 N. Y., S. 767; Hawkins v. Johnson, 105 Ind. 29; Ladd v. Foster, 31 Fed. 827; Lawrence v. Green, 70 Cal. 417; 19 Fed. 794; 14 Fed. 562; 20 Fed. 105; Semeona v. Lindsay, 65 A. T. L. 778; Sherwood v. N. Y. Central Ry. Co., 105 N. Y. 547; Pearce on Railroads, 328, 69 N. Y. 158; 137 N. Y. 1.

FISK, J. Plaintiff, as guardian ad litem for one Ray Umsted, recovered judgment against defendant in the court below for the sum of $5,000 as damages for the alleged negligence of the defendant, resulting in serious personal injury to such minor. At the conclusion of the plaintiff's testimony, defendant moved for a directed verdict, which motion was denied, and an exception taken. At the close of all the testimony, defendant renewed its motion for a directed verdict, which was also denied, and an exception saved. Thereafter, on plaintiff's motion, the trial court, over defendant's objection, instructed the jury that the sole question for them to determine was the extent of the damage suffered by plaintiff on account of his injuries, to which ruling defendant excepted. On all other issues the trial court subsequently made findings of fact favorable to plaintiff. Thereafter defendant moved in the alternative for judgment notwithstanding the verdict, or for a new trial. The latter motion was denied and an exception taken.

The facts necessary to a correct understanding of the questions presented by the appeal are not seriously in dispute, and are as follows: Defendant is a corporation owning and operating a grain elevator at Colgate. The power necessary to operate the machinery in this elevator is generated by a gasoline engine located some distance from the elevator and connected by a shaft which, when in motion, makes about 200 revolutions per minute. One Borneman

was in charge of said elevator as manager, and the said Ray Umsted, the person injured, who was between 19 and 20 years of age at the time of the injury, was employed to assist Borneman in operating such elevator. It frequently became necessary to move cars into position for loading grain and this was done by Ray with the use of a crowbar. Some time prior to the accident Borneman and this young man on several occasions discussed the advisability and feasibility of providing a contrivance whereby power from the engine which operated the elevator could be used in moving cars back and forth, and the following scheme was finally adopted: A wooden capstan or drum was securely bolted onto the shafting between the engine house and the elevator building, and a rope was to be fastened to the car and run through a pulley to be fastened to the rail on the railroad track opposite the capstan, and around the latter, and was to be operated by pulling the rope sufficiently tight to enable the drum or capstan, on account of the friction, to wind the rope as the shaft revolved. The construction of such contrivance and the manner of its operation may best be described by quoting from the testimony.

Plaintiff testified: "While I was there several improvements were made. Among these was a car puller. H. B. Borneman installed it. Tim Russ did the work. I saw him do it and was there when he did it. * * * This car puller was a cylinder made out of about 4x6 about 3 feet long and round in the center, and put on the main shaft with eight bolts, and there was an iron pulley fastened to the rail about 30 feet from the shaft and a rope went from the drum through the pulley and up to the car, and I was to pull. * * * I was instructed to put the rope around the drum and pull the slack up. Borneman instructed me. * * * He told me to put that rope around the drum, and explained how to do it, and told me to stand back of the drum and pull the slack to make the rope bind tight enough on the drum to pull the car. He told me to pull that slack and I did so, and the drum slid and burned the rope, and he threw the engine out of gear and told me to take another hitch around the drum, and Mr. Foster also told me, and they both came out and showed me how to do it, and I did so, and he goes back to the elevator and threw the engine in gear again, and it started about 200 revolutions a minute and the rope broke instantly, and I was caught by the spring of the rope coming back. It caught me

and threw me around this drum." Borneman testified: "Ray Umsted went to work in the elevator some time in August. I had quite a few talks with him about a car puller. These talks came up at intervals, and we talked how we was to make one, and decided to get capstan or drum. We had a cut or picture of a puller; not like this Exhibit B. The puller was oval like, and the rope would stay inside, and there would be no chance for the rope to catch. * * * I did not see Exhibit B put on. I was away. When I came back, I got sight of it, and immediately told Ray to take it off at once. I felt out of patience that the thing was on there. Ray said: 'Can't we try it before we take it off?' I said that 'We hadn't better try it; but to satisfy you we will.' " This witness then states that Ray was to handle the rope by standing back of the capstan and keeping such rope taut. Among other things he says: "If it was going too fast, he was to let go of it a little, and work it off and on so as to pull the car." This witness testified that he considered the contrivance impracticable, and he did not want to use it, but Ray was anxious to try the same, and he gave him a chance to satisfy his curiosity. He describes the manner of the injury in substance as follows: "The rope was about 300 feet in length. The portion not in use was right behind the machine alongside of Ray back of the drum. The rope was wound once around the drum. He was back of the drum holding the rope. I fastened the rope to the car. Umsted went to the drum. I went to the engine. The pile of rope was in a coil just at his left. I started the engine which started the shaft revolving. Its speed is about 120 revolutions per minute. It starts almost full speed. I let it run probably half a minute, then put it back on the loose pulley, stopping the shaft from revolving, and went out. I saw the contrivance was not working. I went to where Ray was. The surplus rope was coiled upon the ground just at his left side about a foot high. I said to him to keep away from the rope on the ground, because it looked dangerous. When I last saw him, he was standing there holding the rope as I described. I went to the engine room and started the engine again. I saw the rope break just at the same time I slipped the belt back onto the loose pulley. It was all done in an instant. The rope raised up about a foot from the ground; that is, to its natural height. I examined the rope and found that it had not gone through the block, and that it broke right close up to the car. It was a three-quarter inch rope. I helped take Ray out and think there were two

strands around his ankle; can't say how much rope was wrapped around the pulley when we took Ray out." Ray was caught in some manner by the rope catching and pulling him onto the shaft which caused his injury. The exact cause of the injury is not clear from the testimony. Both Borneman and the witness Foster agree that, when Ray put the rope around the capstan the second time, he did not put the entire coil of rope around as he had been instructed to do, but made a loop and put that over, and it is the theory of the defense that, on starting the engine, the second time the slack rope, which was lying in the coil, counterwound on the capstan and Ray's left foot became entangled in such rope pulling him upon the revolving shaft, and this is undoubtedly correct, as it is impossible to discover from the testimony how the injury could have happened in any other way.

In disposing of this appeal, however, in so far as the errors assigned upon the ruling of the trial court in denying defendant's motions for a directed verdict and for judgment non obstante veredicto are concerned, it is our duty to construe the testimony in the most favorable light to the plaintiff. We will therefore assume the correctness of his testimony as to how the accident happened, which is to the effect that, after the first attempt to operate the contrivance, the put the entire coil of roope around the capstan again as directed by Borneman, and that, immediately after the shaft commenced to revolve on the second attempt, the rope broke between the car and the pulley, and plaintiff in some unknown manner was caught by the rope which sprang back, and was thereby pulled upon the revolving shaft or capstan, receiving the injuries complained of. Even in the light of these facts we are at a loss to understand how defendant can be held liable for plaintiff's injuries as a matter of law. Plaintiff was about 19½ years of age, and, so far as the testimony discloses, possessed average intelligence, and was capable of exercising the discretion and judgment of the average person of his age. So far as the record discloses, he was equally as well qualified to understand the dangerous character of such contrivance as the witness Borneman, and he certainly had just as much opportunity as did Borneman to acquire knowledge thereof. They talked over together on several occasions the advisability and feasibility of installing such car puller, and plaintiff was partially instrumental in procuring the same to be installed, was present and saw it installed, and assisted Borneman in procuring and adjusting

the rope to such contrivance. In view of these facts, we are forced to the conclusion that although Borneman acted as vice principal in installing such car puller, and hence his negligence was the negligence of the defendant, we think it very clear that, unless a jury was waived, the questions as to whether plaintiff voluntarily assumed the risk incident to the operation thereof, and as to whether he was guilty of negligence which contributed proximately to cause his injuries, were questions of fact for determination by the jury. The doctrine of "the last clear chance" invoked by respondent's counsel has no application to the facts in this case. Such doctrine applies only to a case where the master knew of the plaintiff's peril, and might have obviated the injury, but failed to do so. While the testimony discloses that Borneman had but little confidence in the practicability of the contrivance, it does not appear that he possessed superior knowledge or information to that possessed by the plaintiff that the same was dangerous, or that plaintiff's position near such drum or capstan was necessarily perilous. In other words, plaintiff and Borneman, so far as the record discloses, apparently stood on an equal footing in this regard, and it does not appear that the latter could have avoided the injury after learning of the actual danger which threatened the plaintiff. The jury would have a right to say that, if it was an act of carelessness and negligence on the master's part to install and attempt to operate such contrivance, it was equally an act of carelessness and negligence on plaintiff's part to co-operate with Borneman in the installation and attempted operation thereof. Plaintiff had equal opportunity with Borneman for observing the dangerous character of such contrivance, and, if he knew of and fully appreciated the danger, he should be held to have voluntarily assumed the risk of attempting to operate the same; the risk attendant upon its operation being as easily discernible by him as by Borneman. The rules of law governing cases of this character are so well settled that we deem it unnecessary to do more than to briefly refer thereto.

The servant has a right to assume and to rely upon the assumption that the master has provided a reasonably safe place for him to work, unless such place is obviously and necessarily dangerous; but the master is not required to instruct or protect the servant against obvious, known, and necessary dangers, unless the servant, by reason of his youth, inexperience, and lack of intelligence, is unable to fully understand and comprehend the nature and extent of

such dangers. It is the master's duty to protect, warn, and instruct young and inexperienced employes as to the dangers of the employment if the work is such that either experience or instruction is necessary to enable them to do it with safety. The general rules covering the questions of defendant's negligence and of plaintiff's contributory negligence and assumption of the risk under analogous facts are elementary and well settled. Every conceivable proposition which can arise in such cases is very fully and accurately treated, and the authorities cited in the articles on Negligence, Contributory Negligence, and Master and Servant in 29 Cyc. 400 and 26 Cyc. 921, respectively; also in 21 Am. & Eng. Ency. of Law (2d Ed.) 455; 1 Id. 368; 20 Id. 3; Cur. Law, 540. See, also, the valuable note on Assumption of Risks in 7 A. & E. Ann. Cas. 435, and on the "Right of Recovery by Employes Accepting Extrahazardous Duties" in 97 Am. St. Rep. 884. In the note last referred to the following rules, among others, are correctly stated with many authorities in support thereof relative to assumption of risks and contributory negligence. After stating the general rights and duties of the master, it is said: "If a master has discharged the foregoing duties which the law imposes upon him, then a servant voluntarily engaging in a dangerous or extra hazardous employment assumes the ordinary risks incident thereto which are known or obvious to him. And this doctrine applies as well to those risks which first arise or become known to the servant during the service as to those in contemplation at the original hiring. Moreover, it applies alike to all risks, whether they arise from the negligence of fellow servants, insufficiency of workmen; method of work, defective tools, appliances and machinery or dangerous premises. * * * However, the rule that a servant assumes the ordinary risks of his employment presupposes that the master has performed the duties of caution, care, and vigilance which the law casts upon him. It is only those risks which cannot be obviated by the adoption of reasonable measures of precaution by the master that the servant assumes. And the doctrine of assumption of risks applies only to known dangers or those which are so obvious as to be readily perceived. * * * It is the duty of a servant to use reasonable care to inform himself of the hazards to which he may be exposed. * * * He is bound to use his eyes to see that which is open and apparent to a prudent man. * * * But he need not inspect appliances and premises to determine whether they are safe. He has a right to rely on his

master's inquiry because it is the latter's duty to inquire; and he may assume that his master has discharged his duty and made inquiry. The fact that a servant has as good an opportunity as his master to know of defects involving risks does not necessarily charge him with their assumption or with contributory negligence. Starr v. Kruezberger, 129 Cal. 123 61 Pac. 787, 79 Am. St. Rep. 92; Ehlen v. O'Donnell, 205 Ill. 38, 68 N. E. 766. * * * In determining the issue of assumption of risk, regard must be had to the age, experience, and mental capacity of the employe with a view of ascertaining whether he knew and appreciated the danger. * * * Where a servant in obedience to the requirements of his master incurs the risk of machinery which, though dangerous, is not so much so as to threaten immediate injury, or when it is reasonably probable that it may be safely used by extraordinary caution or skill, he is not thus guilty of concurrent negligence, and the master is liable for a resulting accident. * * * 'A man who enters on a necessarily dangerous employment with his eyes open,' says Chief Justice Cockburn, 'takes it with its accompanying risks. On the other hand, if the danger is concealed from him and an accident happens before he becomes aware of it, * * * he may hold the employer liable.' The expression is often met with in the books that a servant assumes the risks of an employment when they are as apparent to him as to the master, or when he has equal means with the master of knowing them. But, as has been very aptly observed, 'the master has no right to assume the servant will use such means of knowledge, because it is not part of the duty of the servant to inquire into the sufficiency of these things. The servant has a right to rely upon the master's inquiry, because it is the master's duty so to inquire, and the servant may justly assume all these things are fit and suitable for the use he is directed to make of them.' Magee v. Nor. Pac. R. R. Co., 78 Cal. 430, 21 Pac. 114, 12 Am. St. Rep. 69. And, even when they have equal knowledge of the danger, it must be remembered that master and servant do not stand on terms of equality. The position of the servant is one of subordination and obedience, and he has a right to rely on the supposed superior skill and knowledge of the master. He is not entirely free to act on his own suspicions of danger, and he cannot be deemed guilty of contributory negligence in obeying an order, unless the danger is so glaring that a reasonably prudent man would not incur it. Stephens v Hannibal & St. J. R. Co., 96 Mo. 207, 9 S. W. 589, 9 Am. St. Rep. 336;

Haleburton v. Wabash R. Co., 58 Mo. App. 27. * * * While an employe is generally held to assume the ordinary risks of the service which are known or apparent to him, still mere knowledge of a risk or danger, without a full appreciation and comprehension of it, is not conclusive against his right of recovery in the event of injury. * * * There is a distinction between knowledge of defects in premises and appliances and knowledge of the risks and dangers that result from such defects. If an employe has knowledge of a defect or is chargeable with notice of it because obvious, but is not aware of the danger incident to and attending it, he is not precluded from recovering damages incurred by reason of such defect. * * * The assumption of risks must rest upon positive knowledge of the precise danger, or upon reasonable means of such knowledge, and not on vague surmise of possible dangers. A servant occupies a position of subordination, and may within reasonable bounds rely on the presumed superior knowledge and judgment of his master. Obedience is his primary duty. When ordered to perform work which is not obviously dangerous or which is of such a character that he cannot see that it cannot be done with safety, or about which there may be a difference of opinion as to the danger, he is not called upon to set up his own judgment against that of his superior, but may rely on his master's judgment and execute his orders, notwithstanding suspicions and misgivings of his own. * * * The law would seem plain where the menace or danger is so uncertain as to cause discussion between the employes and the employer with the result that the employer dissuades the employe of his apprehension that the doctrine of assumption of risks cannot be invoked. Goldthorp v. Clark Nickerson Lbr. Co., 31 Wash. 467, 71 Pac. 1091; Harder Min. Co. v. Schmidt, 104 Fed. 282, 43 C. C. A. 532. * * * There may be a modification of the doctrines of assumption of risk and contributory negligence when a servant responds to the direct and express command of the master or his agent, so that he may recover for injuries sustained when otherwise he would be without a remedy. * * * It is the duty of an employe to submit himself to the reasonable demands of his employer, not only as to the work to be done, but as to the manner of doing it; and it is his right to assume that his employer will take the necessary precautions to secure safety, and will not expose him to unnecessary danger. * * * But a servant is not under all circumstances and at all hazards bound to obey the orders of his mas-

ter. Obedience to an order may so manifestly jeopardize the safety of the servant as to not only justify, but to demand, disobedience. If he knows and appreciates the danger to which obedience to an order will subject him, if the danger is so obvious and glaring that no person of ordinary prudence would choose to encounter it, he cannot voluntarily place himself in jeopardy if he has time to deliberate, and then hold his master answerable for the consequences. * * *" We think the Supreme Court of Ohio in Van Duzen Gas, etc., Co. v. Schelies, 61 Ohio St. 298, 55 N. E. 998, announced a sound rule upon the subject of the assumption of known risks by the servant when it said: "The clear result of the best considered cases is that where an order is given a servant by his superior to do something within his employment apparently dangerous, and he, in obeying, is injured from the culpable fault of the master, he may recover, unless obedience to the order involved such obvious danger that no man of ordinary prudence would have obeyed it." We shall not attempt to cite the vast number of authorities supporting the foregoing rules. They may be found collated in the notes and authorities above cited. To warrant a finding that a servant assumed the risks of his employment he need not have had absolute knowledge of the risks if they were such that an ordinarily prudent man under the circumstances could by reasonable diligence have discovered. 26 Cyc. 1203, and cases cited. A servant, although under age, assumes all patent and obvious risk of his employment if he has sufficient intelligence to understand and appreciate it (26 Cyc. 1220 [E]), except where the child is so young as to be incapable of exercising judgment or discretion. The rule of contributory negligence applies where the person is an infant the same as where he is an adult. 29 Cyc. 535 (2) (11). No arbitrary age has been fixed at which a child is required to exercise the care demanded of an adult. In a few states it is held that this question is not one of fact for the jury, but of law for the court (Tucker v. N. Y. Cent. & H. R. R. Co., 124 N. Y. 308, 26 N. E. 916, 21 Am. St. Rep. 670; Nagle v. Alleghaney R. R. Co., 88 Pa. 35, 32 Am. Rep. 413), and that an infant over the age of 12 years will be presumed to be sui juris, and chargeable with the same degree of care and caution as an adult in the absence of proof of mental incapacity. 29 Cyc. 540, and cases cited. Such doctrine is repudiated, however, by most courts which hold that, while a child of 12 years or over may be guilty of contributory negligence, it cannot be said as a matter of

law that he should be required to exercise the same degree of prudence and judgment as an adult, and in every case the question of the intelligence of the child and the measure of his capacity should be left to the determination of the jury. 29 Cyc. 540. As said by the Supreme Court of Wisconsin in the recent case of Upthegrove v. Jones, etc., Coal Co., 118 Wis. 673, 96 N. W. 385: The true test as to whether a minor has assumed the ordinary risks of his employment, or is guilty of contributory negligence, is not whether he, in fact, knew and comprehended the danger, but whether, under the circumstances, he ought to have known and comprehended such danger. * * * Where it appears from the undisputed evidence that the defect or danger is open and obvious, and such as, under the circumstances, ought to have been known and comprehended by the plaintiff, then he will be held to have assumed the risk as a matter of law. Upon this question, see, also, the recent case of Dubiver v. City Ry. Co., 44 Or. 227, 74 Pac. 915, 75 Pac. 693, which was a case of an injury to a minor, and wherein it was held that, the evidence being conflicting, it cannot be said as a matter of law that the minor must be charged with that judgment and prudence usually characteristic of adults, and the question of the minor's contributory negligence was held properly submitted to the jury. See, also, Twist v. Railroad Co., 39 Minn. 164, 39 N. W. 402, 12 Am. St. Rep. 626; Railroad v. Pettigrew, 82 Ill. App. 33; Verdelli v. Gray's Harbor, etc. Co., 115 Cal. 517, 47 Pac. 364, 778; American Malting Co. v. Lelivelt, 101 Ill. App. 320; Thompson v. Edward P. Allis Co., 89 Wis. 523, 62 N. W. 527; Bowden v. Co., 185 Mass. 549, 70 N. E. 1016; Lynchburg Cotton Mills v. Stanley, 102 Va. 590, 46 S. E. 908; Canton Cotton Mills v. Edwards, 120 Ga. 447, 47 S. E. 937; Tenn. Coal, etc., Co. v. Jarrett, 111 Tenn. 565, 82 S. W. 224; Williams v. Belmont Coal & Coke Co., 55 W. Va. 84, 46 S. E. 802; Langlois v. Dunn Worsted Mills, 25 R. I. 645, 57 Atl. 910. See, also, Bailey on Personal Injuries, § 2766, and Thompson on Negligence, 978. Whether the defendant through its vice principal, Borneman, was negligent in installing such car puller and in directing the plaintiff to operate the same without suitable warning of the risks and dangers connected with its operation, and whether the plaintiff knew or ought to have known and appreciated the danger in connection therewith and assumed the risk, and whether he was guilty of contributory negligence, are questions of fact proper for the jury to determine. In addition to the foregoing authorities,

see, also the recent cases of Kerker v. Bettendorf Metal Wheel Co. (Iowa) 118 N. W. 306, and Johnson v. Desmond Chemical Co. (Mich.) 121 N. W. 269.

After a careful examination of the foregoing authorities and many others which we deem it unnecessary to cite, we entertain no doubt that the questions of plaintiff's contributory negligence and assumption of the risks were under the facts disclosed by the record for the jury under proper instructions by the court. It was therefore not error to deny defendant's motions for a directed verdict and for judgment notwithstanding the verdict. This disposes of appellant's assignments of error numbered 1, 2, 4, and 10.

The remaining assignments which it is necessary to consider will be disposed of together. They are assignments 3, 5, 6, 7, and 8. These assignments challenge the correctness of the trial court's rulings in taking from the jury, on plaintiff's motion, all questions except the extent of plaintiff's injuries, and in disposing of the case as a court case by making findings of fact and conclusions of law upon all the issues involved. At the conclusion of all the testimony, and after the court had denied defendant's motion for a directed verdict, the court on motion of plaintiff's counsel instructed the jury that the only question for them to consider was the question of the extent of the injury and the amount of damage. Defendant's counsel took an exception to such ruling, and urge the same as prejudicial error. The learned trial court in granting such motion evidently proceeded upon the theory that by making said motions the parties thereby waived the jury as to all questions except the one as to the plaintiff's damage, and consented in effect to a determination of the other issues by the court. In this we think the court committed error prejudicial to the defendant. The latter neither expressly nor impliedly waived its constitutional right to a jury trial upon all the issues in the case. The lower court no doubt considered as applicable the settled rule in this state that where both parties move for a directed verdict at the close of the testimony, and the party whose motion is denied fail thereafter to specially request that certain questions be submitted to the jury, he will be deemed to have waived a jury trial, and to have consented to a decision of all questions by the court. While it is not entirely clear to our minds that such rule is inapplicable under the facts here presented, we are convinced that its enforcement would work a manifest hardship to appellant, and we are not disposed to extend

the rule to make it apply to cases not strictly and clearly within the prior decisions of this court. The rule is based upon the theory that, by moving for a directed verdict, the attitude of the party thus moving is that there is no issue of fact to be submitted to the jury, and that the court should dispose of the case as a matter of law, and by such motion he is deemed to have impliedly consented to a disposition of the case without the aid of a jury, unless, after an adverse ruling upon his motion, he requests that certain questions be submitted to the jury. Failure to make such request is construed as an election to stand upon his motion, and hence is an implied waiver of a jury trial and a consent to the submission of all questions to the court for decision, and if, in disposing of the case, it becomes necessary for the court to determine issues of fact, the moving party or parties will not thereafter be permitted to urge that such issues should have been submitted to the jury. The case at bar is not strictly within such rule. The record tends to refute such implied consent. Counsel for defendant resisted plaintiff's request for an instruction restricting the issues to be submitted to the jury and excepted to the giving of such instruction. This rebuts any presumption of an implied waiver of the right to have all issues submitted to the jury. Furthermore, the learned trial court incorporated in the record a statement to the effect that defendant's counsel did not intend to waive the right to have the jury pass upon the questions of fact, nor did they intend to waive their objection and exception to such instruction. The case at bar in this respect widely differs from the case of Bank v. Town of Norton, 12 N. D. 497, 97 N. W. 860. In that case, as stated in the opinion, "the jury was discharged because each party consented that the case be decided by the court. Both parties made motions for a directed verdict, and thereafter each stated that he desired to stand upon his motion, which meant no more or less than that the case was by both parties deemed one for the court without a jury. That such was meant is emphasized by the fact that neither party objected to the discharge of the jury or excepted thereto, nor asked that the jury be allowed to pass upon all the evidence or upon any particular fact. That such was the attorneys' and court's understanding at the time is borne out by the recitals in the order for judgment, as follows: 'Whereupon the defendant and the plaintiff * * * made independent motions to the court for a directed verdict in favor of their respective parties, * * * and, both parties electing and stipu-

lating in open court to stand upon the record,  *  *  *  the court thereupon dismissed and discharged the jury and took complete control of the case.' This recital shows that the trial court understood that the case was by consent of the parties submitted to him for decision on questions of fact and questions of law, and his findings of fact and conclusions of law show that the case was tried by him as a court case. Nothing in appellant's conduct or any objections or motions during the trial or after the trial when copies of the findings were served on him indicated anything different than that he consented that the case be tried as a court case." This precise question has arisen in but a few cases. Counsel for respondent relies upon the case of Galveston, etc., R. R. Co. v. Templeton, 87 Tex. 42, 26 S. W. 1066, but in that case defendant, at the close of plaintiff's case, demurred to plaintiff's evidence, and, the plaintiff having joined in such demurrer, it was held that the question of plaintiff's right to recover was withdrawn from the jury. In that case, however, no testimony was introduced in defendant's behalf, and it does not appear that plaintiff made a motion, as in the case at bar, which was granted, restricting the issues for submission to the jury, or that, if such motion was made and granted, defendant saved an exception to such ruling. The question also arose in the Court of Appeals of New York, and in disposing of it the court said: "Upon the close of the evidence and after a motion for a nonsuit had been denied, the judge decided that there was no question for the jury but the question of damages, to which there was an exception. It is questionable whether this exception is available to the defendants in this court. After the defendants had asked the court to determine the questions as matters of law in his favor on a motion for a nonsuit, and they afterwards desired such questions to be submitted to the jury as questions of fact, it was their duty to have specified the questions which they desired to have submitted. O'Neill v. James, 43 N. Y. 84-93; Winchell v. Hicks, 18 N. Y. 558. The court might have assumed that the defendants rested upon their legal propositions and thus have been misled. It would be perhaps rather rigorous to enforce this rule in this particular case, and we have concluded to waive its application." Muller v. McKesson, 73, N. Y. 195, 29 Am. Rep. 123. In Calder v. Crowley, 74 Wis. 157, 42 N. W. 266, a verdict was directed for the plaintiff, and defendant on the appeal contended that under the

most favorable view for the plaintiff that could be taken of the testimony it was a question for the jury, saying: "I claim a verdict should in fact be directed upon that point in favor of the defendant." The court said: "But he did not submit any motion to that effect. Had he done so, however, we should be slow to hold that he thereby waived his right to have the question passed upon by the jury." In Clancey v. Reis, 5 Wash. 371, 31 Pac. 971, the defendants at the close of plaintiff's testimony moved for a nonsuit, and, such motion being denied, they rested their rights upon an exception to such ruling and refused to put in any proof, and the court very properly held that, the testimony presented on the plaintiff's part being sufficient to establish all the allegations of the complaint put in issue by the answer, the trial court had a right to assume such facts to be proven for the purposes of that case, unless the defendants introduced some proof tending to disprove the prima facie case thus made by the plaintiff, and it held that an instruction to the jury to return a verdict for the plaintiff was not erroneous. See, also, Bartelott v. Bank, 119 Ill. 259, 9 N. E. 898.

The prior decisions of this court relating to this question of practice have, we believe, extended such rule to its uttermost limit, and instead of extending it still further, as we are asked to do in this case, we would be rather disposed, on the contrary, to modify such rule as thus established by restricting its application to cases only coming within the evident spirit and intent thereof.

Judgment reversed, and new trial ordered. All concur.