PATRICK F. MURPHY v. DULUTH CRUSHED STONE COMPANY.[1]

July 28, 1911.

Nos. 17,167—(232).

**Negligence of master — risk assumed by servant.**

> While acting as engineer on a self-propelling steam hoist, for the purpose of testing whether the hoist would hold when stopped on an incline track, it was discovered that it would not hold, but skidded back down the track, and the plaintiff jumped off and was injured.

1Reported in 132 N. W. 294.

---

[Note] For general note on duty to warn or instruct servant, see 44 L.R.A. 33.

For notes on various phases of the question, see 2 L.R.A.(N.S.) 840; 3 L.R.A.(N.S.) 309; 19 L.R.A.(N.S.) 997; 27 L.R.A.(N.S.) 953.

*Held,* on the undisputed evidence, the plaintiff was familiar with the conditions, and the defendant was not negligent in directing him to operate the hoist without giving him further instructions.

*Held,* also, that plaintiff assumed the risk of operating the hoist under the circumstances.

Action in the district court for St. Louis county to recover $12,320 for personal injuries. The answer denied that plaintiff's injuries were caused through any negligence on defendant's part. The case was tried before Ensign, J., and a jury which returned a verdict in favor of plaintiff for $1,600. From the judgment entered pursuant to the verdict, defendant appealed. Reversed and judgment ordered for defendant.

*Abbott, Merrill & Lewis,* for appellant.

*John Jenswold, Jr.,* for respondent.

LEWIS, J.

Defendant was engaged in operating a stone-crushing plant on the hillside at West Duluth, in St. Louis county. Rock was blasted at the side of the bank and then lifted from the ground to dump cars by means of a steam hoist, which ran back and forth on a track. The plant did not operate in the winter season, and when work closed down in the fall the equipment was put away for the winter and the hoist stored upon a spur track which led out of the quarry and ran down at an incline for several hundred feet. The steam hoist, or traveling crane, so called, weighed fifty-eight tons and was set on a steel deck on two trucks, and had from thirty to forty horse power. It was propelled along the tracks by its own power, and at the rear end of the hoist was located an engineer's cab, with a door on either side. The hoist was adjusted with drums, levers, and apparatus, by means of which the car could be propelled back and forth upon the track, and at the same time the crane or boom could be swung and operated so as to lift a load from either side of the car. The car was provided with four steel I-beams, two on each side, which were so adjusted that they could be pushed under the deck when not in use, or pulled out and braced up for the purpose of balancing the car when the boom was in operation.

The hoist was provided with three hand levers, one for hoisting, one for swinging, and one for operating the load. It also had three foot brakes, one for lifting, one for swinging, and one to operate the traveling gear. All these levers and foot brakes were located in the cab within the convenient reach of the engineer. There was also a hand brake located outside of the cab on the forward end of the car, which, by means of a hand crank, operated the brake upon the rear trucks.

The complaint states that on or about the third day of June, 1910, the plaintiff was in the employ of the defendant as engineer on a steam hoist, and that in pursuance of his duties as such engineer he was ordered and required to operate the hoist along the track upon which it was standing; that the hoist was defective and unsafe for such operation, and that it was not provided with sufficient or proper brakes or means to hold it while in operation upon the incline track; that the track along which plaintiff was required to operate the hoist was not in a condition fit or suitable for the purpose, and that the power and the brakes upon the hoist were insufficient to hold and control it upon the tracks; and that defendant negligently and carelessly ordered plaintiff to work upon the hoist under those conditions, without informing him of the imminent danger to his life and limb, and that through his lack of knowledge and understanding of the risks and of the dangers he was injured by reason of the hoist sliding back and running down the track, which compelled him to jump and resulted in causing the injuries complained of.

Plaintiff recovered a verdict, and the defendant appealed from the judgment entered after denial of its motion for judgment notwithstanding the verdict.

For two years prior to the time of the accident the hoist in question had been operated by an engineer named Thibideau. Having resigned his position, plaintiff was engaged to operate the hoist as engineer, and commenced work on the first day of June, 1910. The plant was in charge of a superintendent named Kennelly. The plaintiff was fifty years of age, and for the past eight years had been a licensed steam engineer, had worked on hoist engines, was

familiar with all kinds of work pertaining to the handling of steam apparatus, but had never had any experience in operating a traveling steam hoist. Plaintiff spent two days in fixing up the machinery and other matters connected with the plant, and on the evening of the third day Mr. Thibideau was sent to instruct him in the operation of the hoist. In the meantime plaintiff had gone over the machinery and had it in condition for running. Mr. Thibideau operated the lever, and plaintiff and the superintendent, Mr. Kennelly, stood by and watched him. He ran the hoist up the tracks some distance, stopped, and set the brakes; but the car began to skid or run slowly down upon the rails. Seeing that the brake or power would not hold the hoist on the incline, Mr. Kennelly and the plaintiff jumped down off the hoist and car and endeavored to block the wheels, so as to stop it before it reached the bottom and was derailed. They attempted to do so with blocks of wood, but were unsuccessful, and the hoist slid down at the rate of five or six miles an hour and was derailed. Prior to and after the derailment Mr. Thibideau showed the plaintiff the use and functions of the various levers.

On the next day the hoist was put back on the track, and the plaintiff took charge, and proceeded to steam up and get everything in readiness. Thibideau had directed the plaintiff that, when he tried the engine again, he had better put sand on the track and keep a full head of steam on, and also as a matter of precaution to fasten a railroad tie on the rails to hold the hoist in case it should slide back. On the next day, and after getting everything in readiness, plaintiff informed Mr. Kennelly that he was ready. They went up to the hoist, and plaintiff took a position in the cab and started up the incline. The hoist proceeded part of the way up as on the day before; but when it had reached a certain point plaintiff stopped it, to see if it would hold. It did not, and started to skid back again, just as it did the day before, at the rate of six or seven miles an hour. The railroad tie fastened to the rails did not stop it, and plaintiff, fearing that he might be injured when the hoist should be derailed at the bottom, jumped from the hoist, and as he

jumped was caught by one of the projecting I-beams, and in striking the ground received injuries.

According to the undisputed evidence, the hoist had never before failed to hold on the tracks, and the only reason any one could give for its skidding back on this occasion was because considerable rust had accumulated on the rails. Whatever the cause, the clutch brake on the front trucks was not itself sufficient to hold the car, and when on the incline it was not possible with the steam power then on to overcome the momentum. Accepting this condition as the defect referred to in the complaint, does the evidence show that the defendant was guilty of negligence in attempting to operate the hoist with the power and the brakes then constituting the equipment?

Upon this point we think it would be altogether unreasonable to require the defendant to anticipate what occurred on the first occasion, and we perceive no negligence in attempting to operate it on the second day, with a view of getting it into working order, so it would hold. If in the ordinary operation of the hoist in the past, on the same track and with the same incline, no such difficulty had ever been met with, it is difficult to see upon what ground the defendant should be required to abandon the hoist or re-equip it with additional brake appliances or additional power, rather than to attempt by trial to overcome the difficulty with which it met on the first day.

The evidence seems equally clear that the defendant was not guilty of negligence in failing to warn the plaintiff of the danger of operating the hoist under those conditions, or in failing to give him further instructions as to how he should operate it on the second day. The defendant was justified in making the trial upon the second day for the purpose of testing out the cause of the skidding, and it possessed no knowledge of any defects causing it to skid, except the mere condition of the track. Plaintiff was fully informed as to these conditions, and there was nothing within the defendant's knowledge that it could have imparted to the plaintiff as to the dangers and risks which he did not already know. He was told that it would be advisable to put sand upon the track, and to keep

up a full head of steam, and to fasten a tie upon the rails in case it should slide back. He was fully informed how to operate the levers in order to throw the clutch into the wheels, thus locking the front trucks, and he claims that he operated the levers properly, and that the clutch was in place, and that steam was turned on. According to his own evidence, the car was operated in exactly the same manner as it would have been by Mr. Thibideau, the man selected to give him instructions. It is not claimed that the hand brake was intended to be set on any such occasion, and it was located at a place where it was impossible to have reached and set it in time. The hoist acted on the second day exactly as it did on the first, and any failure to instruct or warn the plaintiff in any respect could not have been the proximate cause of the accident.

The principle of the master's duty to furnish a safe place in which to work is not applicable to the facts in this case. It conclusively appears that at the time the plaintiff was injured he was not engaged in operating a machine which he had been led to believe would operate in perfect condition. It was being put in order for the season, and this preliminary test work was necessary. Plaintiff knew this, and he took possession of the engine on the second day for the very purpose of making the test. He knew it was but an experiment, which might result in the hoist skidding back, the same as on the first day. He was injured because an emergency arose which he had reason to anticipate, but unfortunately, in trying to jump, he came in contact with the I-beam and was caught. We are unable to see how importance can be attached to the fact that the I-beam was projecting. It was bent somewhat, and for that reason could not be pushed back under the car; but the plaintiff took possession of the car and began to operate it in that condition, and the proximate cause of the accident was not the projecting I-beam.

On the undisputed evidence the master was not guilty of the negligence complained of, and the plaintiff assumed the risk connected with the work in which he was engaged.

Reversed. Judgment ordered for defendant.