## UMSTED v. COLGATE FARMERS ELEVATOR COMPANY.

#### (133 N. W. 61.)

**Injuries to servant on elevator — Contributory negligence and assumption of risk.**

> Plaintiff, while in defendant's employ, received injuries while he and one B, who was in charge of defendant's elevator as agent, were experimenting with, or testing, a mechanical contrivance which they had installed for moving cars by attempting to utilize power for such purpose from the engine used to operate defendant's elevator.

> Evidence examined, and *held*, that it conclusively appears that plaintiff was not only guilty of contributory negligence, but that he assumed the risks incident to such experimental tests.

> Hence his recovery cannot be sustained.

Opinion filed October 26, 1911.   Rehearing denied November 10, 1911.

Appeal from the District Court of Cass county; *Honorable Charles A. Pollock*, J.

Action by Ray Umsted against the Colgate Farmers Elevator Com-

Note.—As to the general question of liability of master for injury to servant caused by defective elevator and the negligence of a fellow servant, see note in 2 L.R.A. (N.S.) 647.

As to contributory negligence of servant in adopting a dangerous method, see note in 97 Am. St. Rep. 895.

pany. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, defendant appeals.

. Reversed.

*Ball, Watson, Young, & Lawrence,* for appellant.

*W. J. Courtney,* for respondent.

FISK, J. This cause was before us on a former appeal. See 18 N. D. 309, 122 N. W. 390. For a general statement of the nature of the litigation, see the former opinion.

At the first trial the lower court, in effect, directed a verdict in plaintiff's favor on all the issues except that involving the extent of the damages suffered by him. We reversed the judgment on such appeal, and awarded a new trial, for the reason that as the record then stood we deemed the questions of defendant's negligence, of plaintiff's contributory negligence, and his assumption of the risks, properly questions for the jury, and not the court, to decide. We there fully stated the rules of law governing such questions as applicable to the subject of master and servant, under the facts there presented, and it will not be necessary to restate them here. The statement there made of such rules now constitutes the law of the case, and must control so far as applicable in the disposition of this appeal. The last trial resulted in a verdict for plaintiff for $3,500, and this appeal is from an order denying defendant's motion for judgment *non obstante veredicto* or for a new trial. Appellant assigns a great many alleged errors predicated upon rulings denying its motions for a directed verdict or for a new trial, and also upon numerous alleged errors of a prejudicial character in the admission and exclusion of testimony, and the refusal to give certain requested instructions, and the giving of certain other instructions, to which rulings it duly excepted.

In brief, appellant contends that under the record there was nothing for the jury to pass upon; that there is an entire failure of proof showing negligence on defendant's part causing the injury, and that it conclusively appears that the injury was the direct result of plaintiff's own negligence. Further, that in any event, numerous prejudicial errors were committed against defendant as above stated, entitling it to a new trial. We will consider the assignments in the order in which they are presented in appellant's printed argument. These numbered 15, 29, 49,

and 50 relate to the rulings denying the defendant's motions for a directed verdict, judgment notwithstanding the verdict, and the alleged insufficiency of the evidence to justify the verdict.

Following are the grounds upon which defendant based its motion for a directed verdict:

"That upon the undisputed testimony in the case, the plaintiff has failed to show that the appliance in question was a dangerous appliance, and that its character was known to him, as alleged in his complaint.

"That the injury which the plaintiff sustained was one of the risks of the business in which he was engaged at the time of the accident, and under the statute he is not authorized to recover.

"Upon the undisputed evidence, the plaintiff was himself guilty of negligence which contributed to some degree in the operation of this appliance to causing his injury.

"Upon the ground that if there was any negligence other than his own causing the injury, it was the negligence of Mr. Borneman, who was then engaged in the same work and enterprise, and who, together with the plaintiff, installed this apparatus, and such negligence was negligence of a fellow servant and under the statute the plaintiff cannot recover.

"On the ground that from the evidence offered by the plaintiff, the cause of his accident is purely speculative and conjectural, and a verdict in his favor could therefore not be sustained, for the reason that he has not shown, by any certain and definite or substantial evidence, the cause of his injury, or that it was a cause for which the defendant was responsible.

"From the undisputed evidence the appliance in question was installed jointly by the plaintiff, his fellow servant, Borneman, and for plaintiff's benefit, and was outside of the regular business of the machinery of the defendant company, and was purely for the plaintiff's own personal benefit in doing the work which the defendant had employed him to do."

And the following is defendant's specification of the particulars, wherein it contends that the evidence is insufficient to justify the verdict:

"1. That under the undisputed testimony the plaintiff was of ma-

ture age and judgment at the time of the accident, and knew or ought to have known all of the dangers, if any, there were attending the operation in which he received his injury.

"2. That the undisputed testimony shows that the operation, if conducted with ordinary prudence, was entirely safe.

"3. The plaintiff's testimony does not disclose the manner in which the accident happened, and leaves it entirely a matter of speculation and conjecture. The only testimony of eyewitnesses shows that plaintiff's injury was caused by plaintiff's own negligence; that if there was any negligence on the part of the defendant it was the negligence of Borneman, who was then a fellow servant of the plaintiff; that the apparatus was merely being experimented with by the plaintiff and his coemployee at the time of the accident, and had not been installed and approved as a part of the appliances of the defendant elevator company; that plaintiff knew and understood the plan of its operation and assisted in constructing it, and knew or ought to have known any dangers attending its use, and voluntarily assumed any risk of injury resulting therefrom.

"4. That the undisputed evidence shows that the accident could not have happened, and did not happen, from any cause for which the defendant is responsible, and could have happened only from the plaintiff's own negligence."

Do the facts on this appeal so materially differ from those presented on the former appeal as not only to justify, but to require, a different conclusion by this court on the questions presented by these assignments? If not, then nothing need be here added to our views on such questions, as expressed on the former appeal. If, however, such question must receive an affirmative answer, it necessitates a reversal of the order and a dismissal of the action, rendering a consideration of the other assignments of error unnecessary.

After a careful consideration of the entire testimony presented on this appeal, we are agreed that under the view of the same most favorable to plaintiff he has wholly failed to establish any liability on defendant's part; and while we are loath to disturb the ruling of the trial court upholding the verdict, our duty so to do appears to us to be plain. On the former appeal the record presented for our consideration, among other things, the correctness of the rulings of the trial

court in denying defendant's motions for a directed verdict and for judgment notwithstanding the verdict. There, as here defendant's counsel vigorously insisted that plaintiff had failed to establish a cause of action, and that there was no evidence sufficient to warrant the submission to the jury of the questions of negligence, contributory negligence, and assumption of the risks, and that such questions should have been determined in defendant's favor by the court as matters of law. In approving the rulings denying defendant's said motions, we, among other things, said:

"The exact cause of the injury is not clear from the testimony. Both Borneman and the witness Foster agree that, when, Ray put the rope around the capstan the second time, he did not put the entire coil of rope around as he had been instructed to do, but made a loop and put that over; and it is the theory of the defense that, on starting the engine the second time, the slack rope, which was laying in the coil, counterwound on the capstan, and Ray's left foot became entangled in such rope, pulling him upon the revolving shaft; and this is undoubtedly correct, as it is impossible to discover from the testimony how the injury could have happened in any other way.

"In disposing of this appeal, however, in so far as the errors assigned upon the ruling of the trial court in denying defendant's motions for a directed verdict and for judgment *non obstante veredicto* are concerned, it is our duty to construe the testimony in the most favorable light to the plaintiff. We will therefore assume the correctness of his testimony as to how the accident happened, which is to the effect that, after the first attempt to operate the contrivance, he put the entire coil of rope around the capstan again as directed by Borneman, and that, immediately after the shaft commenced to revolve on the second attempt, the rope broke between the car and the pulley, and plaintiff, in some unknown manner, was caught by the rope, which sprang back, and was thereby pulled upon the revolving shaft or capstan, receiving the injuries complained of."

There we assumed, for the purposes of a decision of such law questions, the correctness of plaintiff's version or theory as to how the accident happened. Unfortunately for plaintiff we are unable to do this in the light of the record now before us. Plaintiff's proof at the last trial materially differs from that at the former trial in numerous partic-

ulars.  On the first trial plaintiff relied solely on his own testimony to prove the cause and manner of the accident.  On such trial he testified that Borneman installed the car puller.  That he, plaintiff, had no prior experience with machinery, and did not know that the place he went into was dangerous, and had no knowledge of the car puller when he went in there, and that he had not been notified or warned of its dangerous character.  He claimed to have obeyed the instructions of Borneman and Foster as to the manner of handling the rope; and, in describing how the accident happened, he testified: "Mr. Borneman threw the engine in gear again and it started about 200 revolutions a minute, and the rope broke instantly, and I was caught by the spring of the rope coming back, and it caught me and took me around this drum, and the last thing I remember I saw the spring of the rope and the next thing I remember Mr. Foster was cutting me loose and Borneman was coming out of the elevator."  On cross-examination he testified: "When he started the engine the rope slid, the drum went around and the rope did not; burned the rope and the drum too.  . . .  Borneman then disconnected the shaft.  I was standing there holding the rope.  Borneman said to me to take another hitch, and I took it.  . . .  The part that went to the car came out from the upper side and went down toward the car, and the part that I had came out from the under side and back toward me, and I stood there and held it.  I had no talk with Borneman at the time, except that he told me to take another hitch.  He went back into the engine room.  The next thing I knew I see the slack coming.  I was pulling there and just watching the whole thing.  I did not know just when it was going to start.  I stood holding the rope, with the drum in front of me.  I was looking at the rope.  I piled the rope back by my side after I took the second hitch about the place where it was before. I did not see the drum begin to move.  First noticed the slack coming toward me from where the rope broke.  I did not see the rope break, but saw the slack coming toward me from down by the pulley.  I did nothing when I saw the slack coming.  Did not look at the pile of rope near me.  Foster said nothing to me.  I just stood there and held on. The next thing I remember Foster was cutting me loose.  The last thing I remember was seeing the slack coming towards me.  . . .  I do not remember kicking the pile of rope and did not kick it.  Borneman did not tell me to be careful, neither did Mr. Foster.  Mr. Foster did not tell

me to look out for the rope, and I did not tell Mr. Borneman I could take care of myself. I do not remember saying a word to anyone."

The record now before us presents a materially different showing on plaintiff's part in important particulars. He did not see fit to rely upon his own testimony, but called Borneman as his witness. It is true plaintiff testified, as before, that Borneman caused this car puller to be installed, and his testimony as to the manner of the accident is about the same as his former testimony; but when plaintiff's entire evidence is considered, as it must be, we think there is no room for reasonable men to differ as to the truth of the following controlling facts: The car puller was installed as a result of numerous mutual conversations between plaintiff and Borneman regarding the feasibility and practicability of some such a contrivance, the sole object being to lighten the burdens of plaintiff in moving cars to and from the proper position for loading, which work he was obliged to do by the old and laborious method of using a crowbar to pinch them along the track. No definite scheme was decided on for such new contrivance, but Borneman talked with the witness, Fred Mews, a carpenter, and also with one Russ, about such a contrivance, and asked them if there was any way that they could contrive a car puller of some kind, and Mews said he thought there was, but nothing definite was decided on at that time. Afterwards Borneman again talked the matter over with plaintiff, and they finally decided to install a car puller; and Borneman, just before leaving for a few days' absence, authorized plaintiff to see Mews and have one installed, if he, plaintiff, desired, while he, Borneman, was away. As a result of such talk the contrivance in question was partially installed by Russ, a former employee of Mews, with the assistance of plaintiff, who, during such time, was in sole charge of defendant's said elevator. On Borneman's return he expressed dissatisfaction with the same and told plaintiff to remove it. This was not done, however, and after several days had elapsed without attempting to try it, during which time plaintiff, on several occasions, importuned Borneman to test the same before removing it, Borneman finally consented to do so, and they both proceeded to complete the apparatus by procuring the necessary rope and pulley and adjusting them as described in the former opinion. It therefore clearly appears from plaintiff's evidence that he had at least as much to do with installing such car puller as Borneman, and had equal

opportunity with him of acquiring knowledge of its dangerous character. He also knew that it was a new and untried mechanical contrivance, and that they were engaged in a mere experimental test as to its efficiency and practicability. It also appears from plaintiff's evidence that, after the first and unsuccessful attempt to operate such car puller and before the second attempt, which proved disastrous to him, plaintiff was instructed how to adjust the rope on the capstan by taking another lap, and was instructed to put the entire surplus rope over and around such capstan, and he was also warned by Borneman to "keep clear of the rope" which lay on the ground in a coil near his left foot. While it is true that plaintiff, in a way, attempted on rebuttal to deny the latter fact, this testimony fell from the lips of his own witness, Borneman, and such witness is fully corroborated by the only eyewitness to the accident, George Foster. Furthermore, in the light of the facts disclosed in this record we deem such fact immaterial, as plaintiff was as well informed as to the risk of possible or probable danger as was Borneman, and a warning thereof was therefore unnecessary. It is, we think, equally established beyond the peradventure of a doubt, that the proximate cause of the accident was not, as plaintiff sought to show, the springing back of the rope running from the capstan to the car, but was unquestionably the counter-winding on the capstan of the surplus rope in the coil lying on the ground near plaintiff's left foot. Plaintiff does not undertake to state definitely how the accident happened. On the contrary he disclaims any accurate knowledge on the subject, but advances a mere theory as to how it happened. In the light of this record such theory is entitled to no probative weight, and must give way to the direct, positive, and undisputed testimony to the contrary. On the last trial the correctness of such theory was most effectually exploded by the evidence which conclusively rebuts the facts on which it rested. All the testimony in the record points with irresistible force to the fact that the accident happened by reason of the counter-winding of the surplus rope, as before stated. This being true, we are forced to the conclusion that plaintiff was not only guilty of negligence contributing directly to his injury, but he must be held to have assumed the risk of danger which was as fully apparent to him as to anyone else. He admits that Borneman told him to put the entire coil over and around the drum at the time he took another lap, but he insists that he did so. We think the proof conclu-

sively demonstrates that plaintiff is mistaken in this respect, as the evidence clearly discloses that the accident could not otherwise have happened. We are unable to see how, under the rules announced in the former opinion, the defendant can justly or legally be held liable in any way for plaintiff's injuries, and while we very much dislike to interfere with the trial court's action in upholding the verdict in plaintiff's favor, we feel that it is clearly our duty to do so under the present status of the record.

A recent decision in Minnesota in a somewhat similar case lends support to our views. Murphy v. Duluth Crushed Stone Co. 115 Minn. 308, 132 N. W. 294.

In this connection we deem it proper to state that the case was apparently tried the last time largely upon the theory that there could be no recovery if the proximate cause of the injury was, as testified to by Foster and as conclusively shown by all the other testimony in the case, the manner in which plaintiff placed the rope around the capstan whereby it counter-wound from the coil on the ground catching and pulling plaintiff's foot upon such drum. Among other things the learned trial court charged the jury: "If you find that the apparatus in question could be operated with safety by a person exercising ordinary care and prudence; that the plaintiff, through his own carelessness and neglect, placed the coil of rope, which was under his control, so that his left foot was caught in it and dragged upon the drum,—then the fault was his own, and he was the author of his own injury, and he cannot recover." As we view the testimony, there is no room for reasonable minds to differ as to the fact that the injury happened in the very manner stated in such instruction, and that the same might have been obviated by the exercise of reasonable care on plaintiff's part. Hence there was nothing to submit to the jury, and the motion for a directed verdict should have been granted.

The above conclusion renders it unnecessary to consider the other assignments.

Reversed, and the District Court is directed to enter judgment for the defendant.