## SAMPSON S. OAKLAND v. OLE NELSON.

(149 N. W. 337.)

**Jury trial — taking case from jury — explosive nature of dynamite — employee — knowledge of — warnings by employer.**

1. It is not error to refuse to take a case from the jury where there is evidence, though contradicted, to the effect that plaintiff, a boy of nineteen, who knows generally of the explosive nature of dynamite, and has seen it used occasionally, but has had no real experience in its use or knowledge of its explosive powers when placed in mud and water at a depth of from 19 to 23 feet, or of the time which it takes a fuse to burn, is directed to push dynamite down

---

Note.—It is well settled that the fact that a servant at the time that he was injured was complying with the direct order of his master, or his master's representative, has a material bearing upon the question whether he can hold the master responsible. The servant's right to act upon the order and to recover for the resulting injury depends upon certain conditions. While the servant is usually entitled to act on the assumption that his master has performed and will perform his duty, and while the primary duty of a servant is obedience, yet if the risk to which the direct order exposes the servant is one of the assumed risks of the employment, or if the risk is so obvious and great that no reasonably prudent person would incur it, the servant can, of course, not recover. The various phases of this question are discussed, with a full review of the authorities, in a note in 48 L.R.A. 73, and the later cases are to be found in a note in 30 L.R.A.(N.S.) 437.

into a hole which has been drilled for the purpose of draining water from a swamp, and, after the dynamite has been twice caught on the sides of the hole, has been twice directed by the employer to push it down, but is not warned of the time limit of said fuse, or told to come away from the hole, or to desist from the work, until too late to escape the explosion.

**General verdict — special findings — must be germain to issues — jury — misleading.**

2. Where a general verdict is asked for, and in addition thereto special findings, it is not necessary that such findings shall cover all of the points in issue, provided only that they are germain to the same and are not calculated to mislead the jury.

**Admissions — usually open to contradiction — contractual.**

3. Unless admissions are contractual they are not usually conclusive, but are open to rebuttal or explanation, or they may be controlled by higher evidence.

**Employer — degree of care — danger — guarding employee from — dangerous explosives — use of — instruction to jury.**

4. The degree of care which is to be used by an employer in guarding an employee from danger in the case of the use of dangerous explosives is much greater than that which is to be used under ordinary circumstances, and it is not error for the court to suggest such fact to the jury.

Opinion filed September 14, 1914. On petition for rehearing November 16, 1914.

Appeal from the District Court of Ransom County, *Allen, J.* Action to recover damages for personal injuries. Judgment for Plaintiff. Defendant appeals.

Affirmed.

*Melvin A. Hildreth,* for appellant.

Plaintiff fully appreciated the danger he was in, and it must be held under settled authority that he assumed the risk. Chicago, B. & Q. R. Co. v. Shalstrom, 45 L.R.A.(N.S.) 389, 115 C. C. A. 515, 195 Fed. 725; Choctaw, O. & G. R. Co. v. McDade, 191 U. S. 64, 48 L. ed. 96, 24 Sup. Ct. Rep. 24, 15 Am. Neg. Rep. 230; St. Louis Cordage Co. v. Miller, 63 L.R.A. 551, 61 C. C. A. 477, 15 Am. Neg. Rep. 476, 126 Fed. 495; Glenmont Lumber Co. v. Roy, 61 C. C. A. 506, 126 Fed. 524, 15 Am. Neg. Rep. 483; Burke v. Union Coal & Coke Co. 84 C. C. A. 626, 157 Fed. 178; James v. Rapides Lumber Co. 50 La. Ann. 717, 44 L.R.A. 40, 23 So. 469; Utah Consol. Min. Co. v. Bateman, 27 L.R.A.(N.S.) 958, 99 C. C. A. 365, 176 Fed. 57.

No duty rests upon the employer to inform the employee of defects or dangers or risks which are apparent or readily observed by reasonable use of his senses, having in view the age, intelligence, and experience of the employee. Bohn Mfg. Co. v. Erickson, 5 C. C. A. 341, 12 U. S. App. 260, 55 Fed. 943; Glenmont Lumber Co. v. Roy, 61 C. C. A. 506, 126 Fed. 524, 15 Am. Neg. Rep. 483; King v. Morgan, 48 C. C. A. 507, 109 Fed. 446, 10 Am. Neg. Rep. 200; Louisville & N. R. Co. v. Miller, 43 C. C. A. 436, 104 Fed. 124; Mississippi River Logging Co. v. Schneider, 20 C. C. A. 390, 34 U. S. App. 743, 74 Fed. 195; Lake v. Shenango Furnace Co. 88 C. C. A. 69, 160 Fed. 889; Umsted v. Colgate Farmers' Elevator Co. 18 N. D. 309, 122 N. W. 390, 22 N. D. 242, 133 N. W. 61.

In this case, under the circumstances, the question of .contributory negligence arose as a matter of law, and there was nothing to submit to the jury. McGlynn v. Brodie, 31 Cal. 377; Hayden v. Smithville Mfg. Co. 29 Conn. 548, 13 Am. Neg. Cas. 669; Williams v. Clough, 3 Hurlst. & N. 258, 27 L. J. Exch. N. S. 325; Griffiths v. Gidlow, 3 Hurlst. & N. 648, 27 L. J. Exch. N. S. 404, 10 Mor. Min. Rep. 639; Dynen v. Leach, 40 Eng. L. & Eq. Rep. 492.

The use of dynamite with a fuse lighted by a man nineteen years of age is of itself perfect notice of the great danger accompanying such use. A minor, like an adult, assumes the obvious risks of injury. These risks are such as a man of plaintiff's age and intelligence ought to see, observe, and appreciate by the use of ordinary care. Kielley v. Belcher Silver Min. Co. 3 Sawy. 500, Fed. Cas. No. 7,761.

The special findings of the jury should be germain to the general issues in the case. In the case at bar, they are contradictory and misleading. Morrison v. Lee, 13 N. D. 591, 102 N. W. 223; Clementson, Special Verdicts, pp. 208, 209 and cases cited.

*Curtis & Curtis,* for respondent.

The questions of defendant's negligence, plaintiff's contributory negligence, assumption of risk, care, etc., are for the jury. Umsted v. Colgate Farmers' Elevator Co. 22 N. D. 242, 133 N. W. 61; Houston, E. & W. T. R. Co. v. De Walt, 96 Tex. 121, 97 Am. St. Rep. 877, 70 S. W. 531.

Where the servant acts under the immediate or personal direction of the master or foreman, he assumes no risks except such as are

ordinarily incident to the employment, unless the danger is so open and apparent that a prudent man, by the use of ordinary care, could or ought to see it. Faulkner v. Mammoth Min. Co. 23 Utah, 437, 66 Pac. 799.

BRUCE, J. This is an appeal from a judgment for the plaintiff in an action which was brought by a farm laborer of the age of nineteen to recover damages for injuries sustained while assisting his employer in exploding dynamite while seeking to drain a slough. The complaint is "that the defendant, the employer aforesaid, required of him (the plaintiff) services outside of the duties ordinarily incident to his employment and subjecting him to additional danger, to wit, the placing of dynamite for the purpose of explosion; that plaintiff being ignorant of the use of dynamite and the danger incident to the use thereof, and relying on the defendant to protect him from any danger in compliance with the specific demands of the said plaintiff, he being then and there present and commanding, said commands and directions being negligently and carelessly given by the defendant without warning plaintiff of the dangers thereof, placed the said dynamite in the way, and at the time directed by the said defendant, and while trying to push the said dynamite down into the hole prepared for it, as negligently and carelessly commanded by the defendant, the said dynamite, without fault or negligence on the part of the plaintiff exploded," etc.

These allegations, with the possible exception of that part which negatives contributory negligence, are so clearly sustained by the testimony of the plaintiff (and this testimony must of course be considered conclusive upon this appeal) that we deem no discussion to be necessary here. As to whether contributory negligence is shown to have existed, however, is a matter of far less certainty, and though we adhere to the negative of the proposition, it may be well to consider the evidence in detail. In doing so, however, all that we can and should consider upon this appeal is the evidence of the plaintiff himself, as the same, though contradicted to a large extent by the testimony of the other witnesses, is not so grossly improbable as to be unworthy of credence, and has the support of the verdict of the jury. This testimony is to the effect that the plaintiff was about eighteen and one-half years of age at the time of the accident, and had been in the United

States for about two years; that he had first worked upon a railroad and then upon a farm, and had begun to work for the defendant in the middle of January, 1913, the accident happening on February 13th; that on the day in question he was boring a hole with an auger in a slough to drain out the water; that the defendant was working with dynamite at a hole about 10 rods away, and told him to come over and help him; that when he got there the defendant gave him a stiff fence wire to the end of which were attached about five and one-half sticks of dynamite, and told him to push the dynamite down into the hole; that when the order was given the defendant was standing by and attending to the fuse, which was about 2½ feet in length, and when the plaintiff was pushing it down the defendant was standing by and looking at him; that the dynamite went down 8 feet until it struck the water, and then it would not go any further, so plaintiff called upon the defendant to help him. Defendant then told the plaintiff to push the dynamite down and come over and help him; that they got it started, and it went down about 10 feet, and that plaintiff could not get it any further; that the defendant then told him to push it down, and helped him; that he then told plaintiff to push it down, and himself went away, and then he said, "For God's sake, let go," and at the same time it blew up.

There is no pretense that the defendant at any time warned the plaintiff of the dangerous character of the work, or explained to him the use of dynamite. It is clear that the plaintiff was working in an occupation outside of the usual occupation of a farm laborer. From the evidence of both parties it appears certain that the defendant lighted the fuse (which was 2½ feet long) before the dynamite was pushed down into the hole. Plaintiff testifies that he was directed by the defendant to push it down at least two times after it was lighted. According to plaintiff's testimony no warning or order to desist was given until it was too late. Defendant, according to this testimony, was clearly guilty of a negligent breach of duty. The only question in the case is whether the plaintiff himself was, as a matter of law, guilty of contributory negligence or assumed the risk of the accident,—in other words, Was the danger "so patent as to be readily observed by him by the reasonable use of his senses, having in view his age, intelligence, and experience." Umsted v. Colgate Farmers' Elevator Co. 18 N. D.

309, 122 N. W. 390, 22 N. D. 242, 133 N. W. 61; Lake v. Shenango Furnace Co. 88 C. C. A. 69, 160 Fed. 889, 892. On this question the evidence of the plaintiff is as follows: "He (the defendant) did not say anything to me about coming away before he used the expression, 'For God's sake, let it go.' When he sent we over there he did not tell me anything about there being any danger from handling dynamite. He said the dynamite we had in America wasn't much good. I never had any experience in handling dynamite before this. I saw my father use it a few times in the old country about four or five years ago. I was about fourteen or fifteen years old. He used it to blast stones that laid on top of the ground in the way. Shot them out of the way. The hole was about 19 feet deep. In the morning, Nelson (the defendant) and I worked together at the hole marked 'C' (another hole). We drilled about 4 feet. Then we went to the hole where the explosion took place. We worked there together about an hour. That hole was about 23 feet deep and about 6 inches across. We went home for noon. When we came back I helped him take the dynamite down, the first time, the time it didn't explode. We used two charges of dynamite on that day, on the day of the accident. The first charge didn't explode. This was about an hour before the explosion. During that hour I drilled on the hole 'C' (another hole). Nelson (the defendant) left that hole, and went back to that other hole where the explosion took place. He went back and pulled out the shot that did not go off. He went back to the house to get a new fuse to fix up for the same charge. When he came back to the hole where the explosion took place he fixed up the dynamite first, and then he came over to me and asked me if I had my knife with me, and I gave it to him. He didn't say anything else at that time. He went over towards the hole, and I stayed there and drilled. He asked me if I would come over and help him. I stood there and drilled at the hole until he said I should come over, and I left my mittens and came over. I worked in Minnesota, north of Detroit. I did not use dynamite there to blow out stumps. I was along and shot stones with dynamite. It was in the evening. We were doing this just for fun. I think it was a stone they had. They wanted it drilled before, and when we came home from the hay field, he asked me if I would come over and look at it. I said I would have to. . . . At the hospital I said that I got hurt in the

explosion, and he asked me how, what was the cause of it, and I said that I thought that the fuse was too short. I don't know how long it will take 2 and ½ feet to burn. I can't say exactly how long I was at the hole after the fuse was lighted and before the explosion. It was a little time. I didn't look at my watch. My best estimate is about two or three minutes. Immediately upon lighting the fuse (it was Nelson who lighted it) I dropped it into the hole. I began to push it down. A stick of dynamite is about 7 or 8 inches long. Both of the sticks that were dropped down in the hole were cut in two. It was five and one-half sticks that we dropped down there, tied with a twine string. The wire was attached to the string. There was just the paper that came from the store, that was all. The parcel was about 3 and ½ inches long, about that, I can't say for sure. I never measured it. I always thought the sticks were 6 or 7 inches long. I never measured them. The wire was heavy fence wire, a little bit smaller than a pencil. We used dynamite a few days before to blow the frost away so we could dig, half a day. Nelson (the defendant) said the dynamite used here wasn't any good. The first time we blowed, the shot went up and didn't blow off the frost. He said that the American dynamite wasn't much good. When we had shot the first time, the charge blew up without breaking the frost. It blowed down in the hole, and broke off just the edge, and then went up into the air. I don't know whether that was unusual. I don't know whether dynamite explodes with equal force in every direction. I didn't know that dynamite was dangerous. I knew it was an explosive. After the first shot had gone off I knew that it was dangerous, but I did not know that it was so dangerous as it was. I knew what a fuse was attached to the dynamite for. I did not know about the time that it would take the fuse to burn up. I had no idea the length of time it would take the fire to reach the dynamite. I saw father use dynamite at home in the old country, four or five shots, I can't remember exactly; it is quite a while ago. He blew up stones that were in the field and in the road. I saw the dynamite shatter the stone. The dynamite we used home I knew that was dangerous, but he (the defendant) said this dynamite wasn't much good. I saw father use it, and when he did use it he only used a little piece. Nelson said that this dynamite wasn't much good the first time we went out to use it." Q. "But you blowed the frozen ground up, didn't you?" A. "Yes, the

last time he blew it he blew it up with nearly a whole stick in there. What was put in here was put in so deep I didn't think anything would come up with it. I expected Nelson would call me away from the hole. I thought he knew what he was working with. He did not call me away. I did not see Nelson go away from the hole. He just went back of me. He was standing by my side, and we worked side by side, and he just went back of me. I don't know where he went. I knew it would hurt if it would come up, but I did not think it would come up. I saw it come up the day before, but that was on the top, up in the frost that shot was. When I saw them shooting dynamite in the old country it threw pieces of the rock about 20 rods. I was about fourteen or fifteen years old."

Here is a case where a boy helps in the explosion of dynamite, together with and under the direction of his employer. He knows generally of the explosive nature of dynamite when placed upon the surface of the earth, but not of its upward tendency when placed in water and from 19 to 23 feet beneath. He has no idea of the time which a fuse takes to burn. Provided that he had left the charge in ample time, that is to say, before the fuse had burned out, it is quite clear that the accident would not have happened, and it is equally clear that it was the duty of the employer who was directing him to warn him of that time, and that the boy neither assumed the risk of his employer's negligence in this respect, nor was it contributory negligence on his part, being unacquainted as he was with the burning time of fuses, to rely upon his employer exercising that care.

There is no merit in the contention that the interrogatories are in no way responsive to the issues of the case or supported by the evidence. These issues, it is maintained, were (1) that the master had taken the employee out of his ordinary labor, and had put him into the business of handling dynamite; (2) that he had not warned him in the use of it; (3) that it was carelessly handled on the day in question; (4) that the servant was free from contributory negligence. There were, it is claimed, no findings whatever upon the questions of the proximate cause of the injury,—whether it was the failure of the master to warn the employee in time to get away from the hole, or whether it was the failure to warn him that dynamite was dangerous, or whether it was a failure to inform the plaintiff just when the dynamite would be likely to explode.

We do not so understand, either the verdict or the pleadings. The questions and answers were: (1) Q. "Did Nelson, the defendant, say to the plaintiff before leaving the hole where the dynamite was placed, "it is about time for us to get away?'" A. "No." (2) "Did Nelson, the defendant, say to the plaintiff, just after he, Nelson, had stepped back from the hole where the dynamite was placed, 'Come away?'" A. "No." (3) "Did Nelson, the defendant, say to the plaintiff a second time after he had taken a couple of steps from the hole where the dynamite was placed, 'Come away?'" A. "No." (4) "Did Nelson, the defendant, after he had gone still further away say to the plaintiff, 'For God's sake, come away?'" A. "Yes." (5) "Had the plaintiff sufficient time to get to a place of safety after being commanded by the defendant, Nelson, to come away?" Ans. "No." (6) "Did the plaintiff know or lead the defendant to believe that he knew of the dangerous character of dynamite?" Ans. "No."

We concede as a general proposition the truth of appellant's contention that a special verdict must find the facts as alleged in the complaint, and that a finding that does not pass upon the material issues in the case cannot form the basis of a judgment. Morrison v. Lee, 13 N. D. 591, 102 N. W. 223; Clementson, Special Verdicts, pp. 208, 209. The main trouble with the contention of counsel, however, is that in the present case the verdict was not a special verdict. It was, in fact, merely a general verdict with special findings. Such a verdict is, we believe, authorized by § 7034, Rev. Codes 1905, which among other things provides, "The court may also direct the jury, if they render a general verdict, to find in writing upon any particular questions of fact to be stated as aforesaid." We concede that these particular questions must be germain to the issues involved, and not calculated to lead the jury astray. We do not believe, however, that they need cover all of the questions and issues in the case. The case of Morrison v. Lee, supra, which is relied upon by counsel for appellant, relates to special verdicts, and not to special interrogatories. There can be no doubt that the questions here propounded, though not covering all, were pertinent to the issues involved. According to counsel for appellant himself, "the gist of the complaint is the failure to warn the plaintiff of the dangerous character of dynamite, and negligence in "commanding in the use thereof."

The first of these issues was squarely presented by the interrogatories, while the failure to give the order to desist and come away to one who had been commanded to press into a hole a dynamite charge to which a lighted fuse has been attached, without having first warned the workman of the danger, and he having no knowledge of the time limit of the fuse, is certainly evidence of "negligence in commanding."

It is true that the common law confers upon employers the right to decide how their work shall be performed, and to employ men to work in an unsafe place and with dangerous instruments, and without incurring liability for the lives of the workmen who knew, or should have known, the hazards of the service they have chosen to enter. If an employee enters upon the service knowing the risks involved, he is regarded as having voluntarily incurred them, unless the employer urges or coerces him into the danger, or in some way directly contributes to the injury. See note to Houston, E. & W. T. R. Co. v. De Walt, 97 Am. St. Rep. 877. It is to be remembered, however, that in the case at bar the proximate cause of the injury was the failure to leave the hole before the fuse had time to burn out, and it is quite clear to us that it was the duty of the employer to see that this was done. It is to be remembered that the fuse was lighted before the dynamite was placed under the water, and that the accident happened while it was being pushed down. It would be absurd to contend that in such a case, and when the work is done under the direction of a master, the time when the same can be safely continued is a matter for the individual opinion of each of the employees interested.

We have carefully examined the instructions which were given to the jury, and though some technical criticisms may be made thereon, we find no prejudicial error.

We cannot say that as a matter of law it was contributory negligence on the part of the plaintiff to help in placing the dynamite in the hole with the lighted fuse attached thereto, and to push it down as commanded by the defendant. This is a question for the jury, and not for the court, to pass upon. The same is true of the actual acquaintance with the use of dynamite that the plaintiff possessed, and as to whether the admissions claimed to have been made by him were in fact made. It is also true of the question as to whether under the circumstances the defendant should have instructed the plaintiff as to the particular

dangers of the occupation. Sims v. East & West R. Co. 84 Ga. 152, 20 Am. St. Rep. 352, 10 S. E. 543; Texarkana & Ft. S. R. Co. v. Preacher, — Tex. Civ. App. —, 59 S. W. 593; Atlanta & W. P. R. Co. v. Smith, 94 Ga. 107, 20 S. E. 763.

We find no error in the charge that "the plaintiff in this case, gentlemen, was a witness in his own behalf. You are the sole judges of the credibility. All statements made by him, if any, which are against his own interest, must be taken as true, but his statements in his own favor are only to be given such credit as the jury, under all the facts and circumstances in the evidence, deem them entitled to," which instruction was given after the following: "I instruct you further, gentlemen of the jury, that if the injury complained of on the part of the plaintiff was not due to his own carelessness and failure to obey orders, under the rules of law as I have defined them to you, then the statement upon his part, if you find any such statements were made, that the injury was due to his own carelessness or want of obedience of defendant's orders, in and of itself would not preclude or necessarily prevent a recovery. His right of recovery does not depend upon what he may admit or what he may deny, but it is dependent upon the state of facts upon which due care is predicated. At the same time, an admission of fact made under such circumstances at the very time of the happening of the accident, when all of the facts were fresh and open to observation, and made by a man who had engaged in this work, and made against his own interest, is evidence which you will give such weight as an admission of carelessness as in your judgment it may be entitled to."

In the latter case the court was speaking of admissions made or supposed to have been made by the plaintiff soon after the accident, but which the plaintiff denied having made. In the former case, he was speaking of the testimony of the plaintiff which was given upon the trial. "It is hardly necessary to add," says Mr. Jones, in ¶ 296 of his Commentaries on Evidence, that "unless admissions are contractual or unless they constitute an estoppel within some of the rules already stated, they are not conclusive, but are open to rebuttal or explanation, or they may be controlled by higher evidence." It is also true that the court spoke of admissions which were claimed to have been made at the very time of the happening of the accident, when some of those

testified to were claimed to have been made later, and when the plaintiff was in the hospital. The latter supposed admissions, however, covered the same ground and were of the same nature as those supposed to have been made at the time of the accident, and we cannot believe that the jury was in any way misled by the language used. We may not thoroughly understand counsel's objections, but if they are that the court should have charged the jury that the plaintiff was conclusively bound by these disputed admissions, there is clearly no merit in them. Testimony which is given upon the trial of a cause and under oath is one thing. Disputed admissions which are alleged to have been made before the trial are another.

Nor do we find reversible error in the following portions of the charge to the jury and of which complaint is made: "I instruct you further, gentlemen of the jury, that when the master employs a minor, that is, one less than twenty-one years of age, to perform work which is dangerous or hazardous to the person of such minor, it is the duty of the master or the employer to explain to such minor the proper manner of performing such work, and also to explain to such minor the dangers and hazards to his person incident to the performing of such work, and how to avoid such dangers, unless the dangers and risk incident to such work are patent and obvious to persons of like and intelligence of such minor; but the master, on the other hand, has the right to rely upon any representations made to him by the minor and employee as to said minor's experience in connection with any proposed work to be done by said minor, and I instruct you, further, gentlemen of the jury, that a servant, when he engages in a particular employment, is presumed to do so with a knowledge of and taking of the risk of its ordinary hazards, but when the servant shows that the injury grew out of the master's negligence, the burden is then upon the master to show that the servant knew and understood the increased dangers." Counsel states and contends that "while it is true that the law of contributory negligence in this state requires the master to establish such negligence by a proper preponderance of the evidence, yet it has never been the law that a servant nineteen years of age who has known the use of dynamite, both in the old country and in the new, who has had experience in the use thereof, and who has received an injury as the

plaintiff did in this case, that by the statements made as he has in this case, that he, and not the master, was to blame; we say here that to lay down a rule that the burden is upon the defendant to show that the plaintiff knew and appreciated the risk is to reach the limit of absurdity. Such cannot be the law. The burden cannot shift from the plaintiff to the defendant under such circumstances. If the servant knew and appreciated the situation and dangers, whether it was in the line of his ordinary employment or was out of that line makes no difference. . . . How it can be contended in any court of justice, under those circumstances, that the burden is then upon the defendant in this case to show that the servant knew and understood the increased dangers." The trouble with counsel for appellant is that he is arguing his case to the jury, and not to the court. All that the court did was to lay down the law, and it was for the jury to pass upon the facts. It was by no means admitted by the plaintiff, or proved by the witnesses, that the plaintiff was cognizant of the dangers attending the use of dynamite, nor does the evidence tend to show that he had anything more than a casual acquaintance with its use. It may be true, as counsel suggests, that a minor of nineteen *who is thoroughly acquainted with the use of dynamite* is not entitled to any more warning or protection than an adult who has the same knowledge, but here counsel begs the whole question at issue, which was, Was he so acquainted? He also contends that the only rule that should have been applied was "that the master owed the duty of ordinary care to his servant, considering all of the conditions and circumstances surrounding the use of dynamite." The degree of care, however, in the case of dangerous explosives must necessarily be much greater than that used under ordinary circumstances, and it is not error for the court to suggest such fact to the jury.

The question was the knowledge of the danger, and whether the employer was justified, under the circumstances, in assuming such knowledge, and this was a matter for the jury to pass upon. If we believe the plaintiff's testimony in this respect, and we have on this appeal no option but to do so, it would have been the duty of the defendant to have warned the plaintiff of the danger, even if he had been an adult.

The judgment of the District Court is affirmed.

## On Petition for Rehearing.

BRUCE, J. Counsel for appellant complains because the testimony of the defendant is not quoted at length in the opinion. In the opinion we expressly stated that when a motion is made to set aside a verdict on the ground of the insufficiency of the evidence, the only question at issue is whether there is sufficient evidence to support the verdict, and the fact that there may be much evidence in contradiction thereof is immaterial. When this statement is made, and it is clearly intimated that it is the plaintiff's evidence that is being considered, we do not believe that any confusion or erroneous impression can be created. The evidence of defendant's witnesses is indeed only material on this appeal on the question of the instructions, and we believe that we have given sufficient thereof for the consideration of the same.

Counsel further complains because the following instructions were not specifically passed upon by this court: "I instruct you further, gentlemen of the jury, that a servant when he engages in a particular employment is presumed to do so with a knowledge of and a taking of the risk of its ordinary hazard, but when the servant shows that the injury received was in consequence of a risk not ordinarily incident to the employment, and that said injury grew out of the master's negligence, the burden is then upon the master to show that the servant knew and understood the increased dangers." It is claimed that this eliminates any care upon the part of the servant. Counsel also complains of the following instruction: "I instruct you further, gentlemen of the jury, that if an employee, in the discharge of the duties in his line, voluntarily takes a place which he is not required to take, he assumed the risk which may attach to the place he may have taken by reason of his employment, and if you find that the plaintiff in this action, of his own free will, without invitation from his employer, the defendant, and notwithstanding the warning of the defendant, placed himself in an unnecessarily perilous position, and in consequence sustained the injury complained of, and you further find that the defendant was in no way negligent, plaintiff, under these circumstances, would not be entitled to a verdict at your hands." This instruction, however, clearly negatives the complaint in regard to the one formerly quoted; namely, that the former instruction "eliminates any care on the part of

the servant," and under it "the servant could close his eyes and stand in front of a gun, and if the master did not tell him to come away before the gun went off, the court, under this opinion, would hold that the master was liable, and would stand by his instruction."

Counsel has, however, throughout his brief and in his petition for a rehearing, taken isolated portions of the instructions, and has refused to consider the instructions as a whole. The question is not whether any particular clause or paragraph in itself is complete and satisfactory, but whether the instructions as a whole are such as to present the case fairly to the jury. We have examined the instructions as a whole in this case carefully, and are satisfied that the case was fairly and fully presented. The second instruction quoted by us, for instance, cures any omission in the one first quoted, while the complaint in regard to the subsequent one, namely, that the court erred in using the words, "and you will further find that the defendant was in no way negligent," and that such words seem to eliminate the offense of contributory negligence, is abundantly met by the other portions of the instructions. In one of them, for instance, the court says, "I instruct you, in this connection, that in determining the relative degrees of care, the want of care manifested by the parties at the time of the injuries, the age and discretion of the party injured, is a proper subject for you to consider; and in determining the issue of the plaintiff's contributory negligence you may look at all the surrounding facts and circumstances in evidence before you, and determine therefrom whether or not the plaintiff used such care as a person of like age and ordinary prudence would have used under the same or similar conditions, and the burden of proof is on the defendant to show contributory negligence of the plaintiff." Again the court said, "Now, gentlemen, by contributory negligence is meant some negligent act or omission on the part of the plaintiff in an action, some act or some omission on the part of Oakland, which concurred or co-operated with some negligent act or omission on the part of the defendant as the approximate cause of the injury complained of by plaintiff; and in this connection, gentlemen, I instruct you that if you believe from the evidence that the plaintiff himself was guilty of contributory negligence approximately contributing to his injury, as contributory negligence has been defined, you will find for the defendant, even though you should believe that the negligence of the defendant

contributed to the cause of the plaintiff's injury. I instruct you further, gentlemen, that the defendant was not an insurer of the plaintiff's safety, at the time and place here in question, and you cannot infer or presume that defendant was negligent at said time and place, or find a verdict in favor of plaintiff, from the mere fact that an explosion occurred and that plaintiff was injured."

Counsel further complains and states that "this court overlooked entirely the question of contributory negligence involved in this case. It overlooks entirely the fact that this story that was told afterwards was, in the judgment of every man, woman, and child that knows the defendant in this case, a manufactured story learned for the purpose of this lawsuit." He is absolutely correct in this assumption, except that this court has overlooked the question of contributory negligence. This court knows nothing of the opinion "of every man, woman, and child that knows the defendant." It is governed by the *record* merely, and has nothing to do with any opinion that is not expressed in the record. In fact, it is governed by the facts disclosed, and not by *opinions,* whether given in or out of the court. Nor, too, does it believe that it is overstepping its duty in affirming a judgment when it can see no prejudice in the record, and believes that the instructions to the jury, when taken as a whole, presented the case fairly and fully, and that no errors of law were committed, even though it appears that there is a material conflict in the evidence which the jury must pass upon.

The petition for a rehearing is denied.